IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| JOHNNIE BELL,<br>PLAINTIFF,<br><br>vs.<br><br>ALABAMA DEPARTMENT OF<br>CORRECTIONS, and DONALD<br>CAMPBELL, in his official capacity as<br>The Warden of the Department of<br>Corrections,<br>            DEFENDANTS. | CIVIL ACTION NO.: <u>2:05 cv 397</u> |

### AFFIDAVIT

Before me, the undersigned authority, a Notary Public, in and for said County and State of Alabama at large, personally appeared Cheryl Price who being known to me and being by me first duly sworn, deposes and says on oath as follows:

My name is Cheryl Price. I am currently employed with the Alabama Department of Corrections as a Correctional Warden III at Bibb County Correctional Facility, 565 Bibb Lane, Brent, Alabama 35034.

In the complaint, Officer Johnnie Bell alleges that female and white correctional officers are given favorable shift rotations and African American male officers were not; white male officers and female officers were given placement of Tower I, Tower II, RPI, and African American males were given A dorm, B dorm, C dorm, and E dorm; assignments in A dorm, B dorm, C dorm, and E dorm were more dangerous because they involved direct contact with dangerous inmates; he advised his supervisors of this difference but they refused to change the rotation; African American males also receive harsher treatment than their white counterparts; he and two of his co-workers were accused of using excessive force against an inmate in April, 2003 and were reprimanded for the incident, but the white employee was not; and that the



DEFENDANT'S EXHIBIT 1

defendant has engaged in a pattern and practice of giving unfair and disparate treatment towards black employees.

In a previous grievance, Johnnie Bell alleged, that the female and male officers had not been required to perform the same job for the same pay; that the female officers were allowed to work certain post; that the black and white females were given safe and desirable assignments; that the employer violated Administrative Regulation 205 regarding rotation; and that he was being denied equal treatment as similarly situated white male and black female employees in the same positions. At that time, Officer Bell was advised that it was the responsibility of the shift commander to rotate the officers on various posts. He was also advised that female Correctional Officers were not assigned to the backgate due to the strip-searching that was required on a routine basis. For this reason, it was not considered sexual discrimination since he was being assigned to the backgate and the females were not.

At no time was there a violation of Administrative Regulation 205, specifically, Selection of Correctional Officer Shift, Off Days, and Administrative Posts in Accordance with Seniority. Bibb Correctional Facility operates on the twelve-hour shift. Therefore, there is no process of selection of off days. When your assigned shift is scheduled off, the entire shift is off. When your assigned shift is scheduled to work, the entire shift is scheduled to work. Individual request may be submitted when an individual desires to take annual, sick, or holiday leave. In accordance with the regulation, shift bids are conducted each year during the month of January. At the time that this grievance was filed, we had very few administrative jobs. Since the filing of this grievance, we were able to increase the administrative positions as the officers were returning from active duty. We have again been forced to reduce the number of administrative positions due to a shortage of security staff.

Anytime an employee enters the institution they are met with a degree of risk due to the crimes that the inmates have committed and are capable of committing. E dormitory is used to

house the majority of the older inmates and the kitchen workers. C dormitory inmates are participating in the Crime Bill Program or are scheduled to attend the program. Upon completion of the program, many of these inmates anticipate an early release from prison or consideration for less restricted placement. A dormitory houses general population inmates with varying job assignments while B dormitory houses a considerable number of inmates who have violated rule #38, specifically, Indecent Exposure. D dormitory was utilized for housing the inmates who participated in the educational program to include special education. The sixth and final dormitory is F and houses the inmates who volunteer to participate in the faith-based program.

The towers and the roving patrol vehicles are located outside the fence and do not require direct contact with the inmates. However, Tower I requires additional training because a log is required to maintain the count of inmates entering and exiting the facility, monitor the vehicles entering and exiting the facility, and to operate the sallyport gates. Because of the number of post for each shift and the number of officers, depending upon the rotation, some officers may not cycle through a post more than once a month or once every two months.

A review of the incidents involving Officer Bell during years 2003, 2004, and 2005, revealed no incident involving Officer Bell and his co-workers being accused of using excessive force. I could find no corrective action initiated against Officer Bell due to his exercising excessive against an inmate. I did find other corrective action to include but not limited to his hitting the perimeter fence while driving the perimeter vehicle. Reported incidents involving Officer Bell are as follows:

- **2003    No incident of Use of Force**
    - Finding of Contraband (Visiting Yard)
    - Possession of Contraband (x2) (B Dorm & Backgate)
    - Violation of Rules and Regulations (B Dorm)

- Consumption or Use of, or Under the Influence of Alcohol, Narcotics or Other Intoxicants (A Dorm)

- **2004    No Incident of Use of Force**

  - Insubordination (x2) (E Dorm Sidewalk & F Dorm)

  - Damaged Equipment (F Dorm)

  - Self Inflicted Injury (D Dorm)

  - Failure to Obey a Direct Order/Insubordination (A Dorm Sidewalk)

  - Broken Key (Dining Hall)

  - Damaged Property (Tower II)

- **2005    No Incident of Use of Force**

  - Fighting Without a Weapon/Theft of Property/Aiding and Abetting Another to Commit a Violation (D Dorm)

  - Violation of Rules and Regulations (E Dorm)

  - Insubordination (D Dorm)

  - Failure to Obey a Direct Order (B Dorm/A-Dorm Sidewalk)

  - Medical Transport (Health Care Unit)

  - Possession of Contraband (B Dorm)

  - Being in an Unauthorized Area/Insubordination (Health Care Unit)

There was not an incident involving Officer Bell and the suspected use of excessive force for the three years searched.

All correctional officers are required to attend the academy, receive training, and successfully obtain A.P.O.S.T. certification to become a correctional officer regardless of their race or sex. The supervisors are expected to do the same and to be fair and equitable to the staff in the administering of their duties. At that time of the initial grievance, Officer Bell was also

advised that in addition to the A.P.O.S.T. certification requirements, the shift commander was required to consider the strengths and weaknesses of the officers under his/her supervision. Depending upon the experience and abilities of the officers the post rotation process may differ from month to month. The investigation into the allegation regarding the lack of post rotation on the A-Day shift resulted in corrective action being initiated against the shift commander. This action was necessary because the shift commander failed to properly rotate the posts to the satisfaction of this administration. There was no documentation reflecting that the rotation process was being influenced because of sex or race, but inexperience. It was also noted at that time that Officer Bell was one of the few truly senior officers who was likely capable of functioning on any post within the institution. This was due primarily to his overwhelming amount of experience by comparison to that of his peers assigned to A-Day shift.

    This statement is true and correct to the best of my knowledge. At no time did I violate the constitutional rights of Officer Johnnie Bell.

_____
Cheryl Price, Warden III

SWORN TO AND SUBSCRIBED before me this 12th day of May 2006.

_____
Rita Breland
NOTARY PUBLIC

_____
October 5, 2009
My Commission Expires